IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
July 8, 2020 Session

## STATE OF TENNESSEE v. JOHN EDWARD WILSON, JR.

**Appeal from the Circuit Court for Weakley County**
**No. 2019-CR-95      Jeff Parham, Judge**

_____

**No. W2019-01550-CCA-R3-CD**

_____

The defendant, John Edward Wilson, Jr., pled guilty to aggravated burglary and indecent exposure for which he received an effective sentence of five years' confinement. The defendant appeals the trial court's denial of diversion and other forms of alternative sentencing, claiming the trial court erred in failing to properly analyze the diversion factors and failing to apply the correct legal standard when ordering confinement rather than probation. The State contends the defendant failed to show he was a favorable candidate for diversion, and the trial court properly exercised its discretion in ordering confinement. Upon our review of the applicable law, the record, and the arguments of the parties, we reverse the decision of the trial court and remand the matter for a new sentencing hearing consistent with this opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed**

J. ROSS DYER, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J., and CAMILLE R. MCMULLEN, J., joined.

Chelsea A. Curtis, Deputy Director Tennessee District Public Defenders Conference, Franklin, Tennessee (on appeal) and Brent Bradberry, Assistant District Public Defender, Dresden, Tennessee (at trial), for the appellant, John Edward Wilson, Jr.

Herbert H. Slatery III, Attorney General and Reporter; Ronald L. Coleman, Assistant Attorney General; Danny Goodman, Jr., District Attorney General; and Colin Johnson, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### *Factual and Procedural History*

Around midnight on November 2, 2018, the defendant entered the victim's home without her permission, undressed in the victim's living room, and proceeded to the victim's bedroom where she was asleep in her bed. When the victim's dog began to bark, she woke to find the defendant standing naked next to her bed. Upon seeing the defendant, the victim screamed and demanded the defendant leave her home. The defendant informed the victim that he did not intend to hurt her, returned to the living room to get dressed, and attempted to leave. The victim, however, armed herself with a .380 caliber handgun, followed the defendant into the living room, and held him at gunpoint while she called 911 and waited for the police to arrive.

When questioned by the responding officers, the defendant claimed he had entered the victim's house based on a bet with his uncle, Leslie Garner. According to the defendant, Mr. Garner bet him $300 to enter the victim's home and scare her. However, when Mr. Garner was questioned by police, he denied any knowledge of the situation or the alleged bet.

As a result of his actions, a Putnam County grand jury indicted the defendant for aggravated burglary and indecent exposure. The defendant pled guilty to the charged offenses. Per the plea agreement, the length and manner of service of the defendant's sentences were determined by the trial court.

A sentencing hearing was held August 9, 2019, during which Brandon Bookout, a probation officer with the Tennessee Department of Correction, testified he was tasked with completing the investigative report for the defendant. When questioned about the Strong-R report included in the defendant's investigative report, Mr. Bookout stated the Strong-R report is created by inputting the defendant's answers to approximately 100 questions into a computer program. According to Mr. Bookout, the program then analyzes the defendant's answers within certain categories and produces a report assessing the defendant's risk of reoffending and/or abiding by the conditions of probation.

According to the defendant's Strong-R report, he was a moderate risk level, meaning "moderately at risk to not abide by all or any rules of supervision." The defendant scored as a high risk in three categories – mental health, residential, and family – and a moderate risk in two categories – employment and education. Mr. Bookout testified the residential category takes into consideration such things as who the defendant is living with, the neighborhood he is living in, and "if there are any antisocial or prosocial community ties within his area." The defendant's moderate score in employment was based on the fact that he had "trouble holding a job."

The defendant scored as a low risk in friends, attitude and behavior, and aggression category. Mr. Bookout explained the attitude and behavior category measured whether the

defendant understood the consequences of his offenses, if he "accounted for them and [knew] that [he] did wrong," and the defendant's attitude on completing probation. According to the defendant's assessment, he had a "good attitude" about such things. The defendant also scored low in aggressive behavior and did not display any aggressive behavior towards Mr. Bookout. Mr. Bookout also noted the defendant did not have a criminal history.

Finally, when asked whether he believed the defendant would be a model probationer, Mr. Bookout stated, "I believe he will do fine on probation if he were to be put on probation."

The defendant also called his mother, Angela Wilson, as a witness during the sentencing hearing. Ms. Wilson testified the defendant was placed in foster care when he was seven years old and remained in foster care until he turned eighteen. During that time, the defendant lived with over ten different families; however, Ms. Wilson had visitation rights and remained in contact with the defendant. The defendant's father, with whom Ms. Wilson remained married and was living with at the time of the sentencing hearing, was incarcerated for most, if not all, of the time the defendant was in foster care.

According to Ms. Wilson, the defendant currently lived with her and would continue to live with her if placed on probation. Though the defendant did not have a driver's license, Ms. Wilson testified she would be responsible for taking the defendant to and from work every day and taking him to meet with his probation officer. According to Ms. Wilson, the defendant recently obtained employment and was working the 11:00 p.m. to 7:30 a.m. shift at Euro. On cross-examination, Ms. Wilson acknowledged the defendant was not living with her at the time he committed these crimes and had only been living with her for the past five months.

When asked why the defendant was placed in the foster care system, Ms. Wilson stated that she could not control him when the defendant was a child. The defendant would not listen to her, would not go to school, was violent, and had anger issues. Based on the defendant's behavioral issues, the "juvenile court system" removed the defendant from the home and placed him in the foster care system. At the conclusion of Ms. Wilson's testimony, the defendant's attorney read into the record the defendant's statement of allocution:

> I am very sorry about all that happened on November 3rd, 2018. This was all just a stupid dare. I know I was wrong for what I did and I want to make up for it. I want to live my life and do right. I told the officers that arrested me that my uncle bet me $300 to go in the house and run around naked, and he is saying that he never said that. My Granny was a witness to

him saying that, but, unfortunately, she passed away on March 10th, 2019. I never wanted to hurt [the victim] at all. I know I messes up, but there is nothing in this world that I can give back to [the victim] for her to feel safe in her own house. I never intended to even touch her. I would not do that to any woman. I was scared to do any of this, but I needed the money, and I just wished I would have told myself not to do it. I really don't want to go to jail or prison because they are not for me. I spent 115 days in the Weakley County Jail. I hope you find this is enough jail time and will allow me to have this huge error in judgment erased from my record by expungement after successfully completing probation. I will be the perfect probationer. I will get a job and keep it. I will pay my fines and I will not use drugs. If I could go to a military I would. When I turned 18, I wanted to go, but I couldn't because of my weight. I know I made some bad choices in my life and I'm asking for forgiveness deep down in my heart. It doesn't excuse what I have done. I feel very bad about what I did.

After hearing the proof, including the defendant's statement of allocution and the arguments of the parties, the trial court denied the defendant's request for alternative sentencing and imposed a sentence of five years in confinement. This timely appeal followed.

### *Analysis*

On appeal, the defendant contends the "trial court abused its discretion and forfeited its presumption of reasonableness" by failing to consider, weigh, and balance all the appropriate factors in reviewing the defendant's request for diversion. Thus, the defendant insists this Court should conduct a de novo review of the defendant's request and, in turn, grant diversion. In the alternative, the defendant contends the trial court erred in denying probation and ordering a sentence of confinement. The State concedes that the trial court erred in assessing the defendant's request for diversion and that this Court must conduct a de novo review. However, the State argues the defendant has failed to show he is an appropriate candidate for diversion even under a de novo review. The State also contends the trial court properly denied probation and ordered confinement. Our review of the record and the applicable law reveals the trial court failed to properly review and assess the defendant's request for diversion. Because the trial court did not conduct the proper analysis in imposing the sentence, we reverse the trial court's judgment and remand for the trial court to make appropriate factual findings and to make determinations which reflect the trial court's consideration of the appropriate statutory and common law principles.

Generally, a trial court's sentencing determinations are reviewed for abuse of discretion, and this Court applies a "presumption of reasonableness to within-range

sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). The burden of establishing that the sentence was improper rests with the party challenging the sentence on appeal. Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts. In imposing a sentence, the trial court must consider: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the mitigating and enhancement factors set out in Tennessee Code Annotated sections 40-35-113 and -114; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement the defendant made in the defendant's own behalf about sentencing; and (8) the result of the validated risk and needs assessment conducted by the department and contained in the presentence report. *See* Tenn. Code Ann. § 40-35-210(b).

When a qualified defendant is either found guilty or pleads guilty, a trial court has the discretion to defer further proceedings and place that defendant on probation without entering a judgment of guilt. Tenn. Code Ann. § 40-35-313(a)(1)(A). Eligibility for judicial diversion does not entitle the defendant to judicial diversion as a matter of right. *State v. Parker*, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996). Rather, the statute states that a trial court "may" grant judicial diversion in appropriate cases. *See* Tenn. Code Ann. § 40-35-313(a)(1)(A).

When making a determination regarding judicial diversion, the trial court must consider the following factors: (1) the defendant's amenability to correction, (2) the circumstances of the offense, (3) the defendant's criminal record, (4) the defendant's social history, (5) the defendant's mental and physical health, (6) the deterrent effect of the sentencing decision to both the defendant and other similarly situated defendants, and (7) whether judicial diversion will serve the interests of the public as well as the defendant. *State v. Electroplating, Inc.*, 990 S.W.2d 211, 229 (Tenn. Crim. App. 1998) (citing *Parker*, 932 S.W.2d at 958). The record must reflect that the trial court considered and weighed all these factors in arriving at its decision. *Electroplating, Inc.*, 990 S.W.2d at 229.

"[T]he abuse of discretion standard accompanied by a presumption of reasonableness applies to all sentencing decisions, including the grant or denial of judicial diversion, when the trial court properly supports its decision on the record in accordance with the purposes and principles of sentencing." *State v. King*, 432 S.W.3d 316, 329 (Tenn. 2014). To determine if there has been an abuse of discretion, this Court examines "whether there is 'any substantial evidence' to support the decision of the trial court." *Id.* at 326.

The trial court is not required to "recite all of the *Parker* and *Electroplating* factors when justifying its decision on the record in order to obtain the presumption of reasonableness," but "the record should reflect that the trial court considered the *Parker* and *Electroplating* factors in rendering its decision and that it identified the specific factors applicable to the case before it." Id. at 327. Once the trial court has considered all the factors and identified the applicable factors, it "may proceed to solely address the relevant factors." *Id.* "Further, the trial court must weigh the factors against each other and place an explanation of its ruling on the record." *Id.* at 326. If the trial court fails to consider and weigh the factors, the deferential standard of review does not apply. *Id.* at 327. "In those instances, the appellate courts may either conduct a de novo review or, if more appropriate under the circumstances, remand the issue for reconsideration." *Id.* at 328. The decision to conduct a de novo review or to remand to the trial court lies within this Court's discretion. *Id.*

This Court likewise reviews a decision regarding alternative sentencing under an abuse of discretion standard, accompanied by a presumption of reasonableness, when the sentence falls within the appropriate range and reflects that the decision was based on the purposes and principles of sentencing. *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012). "[A] trial court's decision to grant or deny probation will not be invalidated unless the trial court wholly departed from the relevant statutory considerations in reaching its determination." *State v. Sihapanya*, 516 S.W.3d 473, 476 (Tenn. 2014) (per curiam). In determining whether to order confinement, the court should consider that:

> (1) Sentences involving confinement should be based on the following considerations:
>
> > (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
> >
> > (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
> >
> > (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant;
>
> (2) The sentence imposed should be no greater than that deserved for the offense committed;

(3) Inequalities in sentences that are unrelated to a purpose of this chapter should be avoided;

(4) The sentence imposed should be the least severe measure necessary to achieve the purposes for which the sentence is imposed;

(5) The potential or lack of potential for the rehabilitation or treatment of the defendant should be considered in determining the sentence alternative or length of a term to be imposed. The length of a term of probation may reflect the length of a treatment or rehabilitation program in which participation is a condition of the sentence;

(6) Trial judges are encouraged to use alternatives to incarceration that include requirements of reparation, victim compensation, community service or all of these; and

(7) Available community-based alternatives to confinement and the benefits that imposing such alternatives may provide to the community should be considered when the offense is nonviolent and the defendant is the primary caregiver of a dependent child.

Tenn. Code Ann. § 40-35-103. In evaluating the suitability of probation, the trial court should also consider the same factors applicable to diversion: "(1) the defendant's amenability to correction; (2) the circumstances of the offense; (3) the defendant's criminal record; (4) the defendant's social history; (5) the defendant's physical and mental health; and (6) special and general deterrence value." *State v. Trent*, 533 S.W.3d 282, 291 (Tenn. 2017).

The defendant bears the burden of establishing suitability for probation. Tenn. Code Ann. § 40-35-303(b). "This burden includes demonstrating that probation will 'subserve the ends of justice and the best interest of both the public and the defendant.'" *State v. Carter*, 254 S.W.3d 335, 347 (Tenn. 2008) (quoting *State v. Housewright*, 982 S.W.2d 354, 357 (Tenn. Crim. App. 1997)). The trial court must also place into the record any enhancement or mitigating factors "as well as the reasons for the sentence, in order to ensure fair and consistent sentencing." Tenn. Code Ann. § 40-35-210(e); *see* Tenn. Code Ann. § 40-35-210(b)(5). "Despite the wide discretion afforded to trial courts in sentencing decisions, the trial court has an affirmative duty to state on the record, either orally or in writing, its findings of fact and reasons for imposing a specific sentence on the record to facilitate appellate review." *State v. Tammy Marie Harbison*, No. M2015-01059-CCA-R3-CD, 2016 WL 613907, at *4 (Tenn. Crim. App. Feb. 12, 2016). While a trial court is not required to use "magic words," "it is . . . critical that, in their process of imposing

sentence[s], trial judges articulate fully and coherently the various aspects of their decision as required by our statutes and case law." *Trent*, 533 S.W.3d at 292. Unless the trial court has articulated the reasons for the sentencing determination, the abuse of discretion standard of review does not apply. *Id.*

Here, at the conclusion of the sentencing hearing, the trial court noted that it had considered the evidence presented during the guilty plea and sentencing hearings, "the principles of sentencing and arguments that have been made for sentence alternative," the criminal conduct involved, the enhancement and mitigating factors offered by the parties, the defendant's allocution, and the defendant's potential for rehabilitation. The trial court then added the following findings:

> The Court has also considered the following in deciding to deny an alternative sentence to incarceration: pre-sentence report, which was entered without objection -- and contained within the pre-sentence report was the defendant's statement taken verbatim whereby he attempted to place the blame of this circumstance upon his uncle. Whether or not the -- the Court also considered the defendant's physical, mental and social history. The Court takes into consideration that the defendant lived in ten foster homes growing up and moved from foster home to foster home for what I believe was probably, as his mother testified, anger issues, even though the Strong-R doesn't show aggression.
>
> The facts and circumstances surrounding the offense and the nature of the criminal conduct involved. This case involved the entering of a woman's home in the middle of the night, whereby the defendant stripped down naked in one room, proceeded to the bedroom where the victim was asleep in the bed. Now, he says he [did not] mean to hurt her or [did not] mean to scare her -- only meant to scare her. But he entered this lady's bedroom in the middle of the night, after he took off all his clothes in another room, proceeded to a bedroom where she was alone in bed, with the exception of a dog. Now, he wants to blame this on his uncle, that it was some dare that he was going to pay $300. But the Court [does not] find that [is] believable or credible. Because had it been, what would have prohibited the defendant from simply going into the garage or walking into the kitchen, not ever waking up the woman, not ever taking off his clothes? Unless his uncle was there how else would he have proven it? So, the Court [does not] find that credible.
>
> The Court took into consideration the lack of a previous criminal history. The Court's also taken into consideration whether or not a full

sentence of full probation would unduly depreciate the seriousness of the offense. I strongly believe it would unduly depreciate the seriousness of the offense. And whether or not confinement is particularly suited to provide an effective deterrent to others likely to commit similar offenses, I think that it is the range -- and I base a lot of this on the mother's testimony about his anger issues.

Our review of the trial court's ruling reveals that the trial court did not differentiate between diversion and probation or any type of alternative sentence. More specifically, at the outset of reciting his findings concerning alternative sentencing, the trial court did not mention diversion or probation. Rather, the trial court simply stated, "the court has also considered the following in deciding to deny an alternative sentence to incarceration." While a review of the trial court's comments can be viewed as a recitation of some, but not all, of the *Parker* and *Electroplating* factors, at no point does the trial court indicate the weight it assigned to any of the factors, as required by *King*. *King*, 432 S.W.3d at 326. For example, while the trial court noted the defendant spent a significant portion of his childhood in foster care, had a minimal criminal history, and his explanation of the crime was not credible, the trial court failed to mention how these factors weighed either in favor of or against the granting of diversion or how much weight the trial court was placing on each.

Regarding the decision to impose confinement, the trial court merely stated,

The Court's also taken into consideration whether or not a full sentence of full probation would unduly depreciate the seriousness of the offense. I strongly believe it would unduly depreciate the seriousness of the offense. And whether or not confinement is particularly suited to provide an effective deterrent to others likely to commit similar offenses, I think that it is the range -- and I base a lot of this on the mother's testimony about his anger issues.

Again, as with the trial court's diversion analysis, the trial court's analysis of full probation seems to fall short. The trial court did not indicate whether it examined the statutory considerations for imposing confinement and did not place in the record its reasons for imposing the sentence. *See* Tenn. Code Ann. §§ 40-35-103(1)(A)-(C), -103(5), -210(e); *see Sihapanya*, 516 S.W.3d at 476 (holding that when a trial court denies probation solely on the need for deterrence or solely on the need to avoid depreciating the seriousness of the offense, a heightened standard of review applies).

Accordingly, we reverse the trial court's judgments and remand the case. On remand, we direct the trial court to conduct an appropriate analysis regarding judicial diversion and the manner of service of the sentence, indicating on the record its compliance with the consideration of the statutory and common law criteria of sentencing. The trial court shall then make its sentencing determinations based upon its factual findings and the appropriate sentencing considerations. When the trial court has made its sentencing determinations regarding judicial diversion and confinement, either party may appeal.

## *Conclusion*

Based on the foregoing, we reverse the sentences and remand the case for new sentencing determinations consistent with this opinion.

_____
J. ROSS DYER, JUDGE